# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BILLIE A. CALHOUN,  :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.  :

Case No. 3:08-cv-138

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

2

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on February 26, 2003, alleging disability from October 1, 2001, with a resulting inability to work since January 17, 2003, due to a back impairment, hepatitis, and glaucoma. (Tr. 84-86; 110). Plaintiff's application was denied initially and on reconsideration. (Tr. 59-62; 66-68). A hearing was held before Administrative Law Judge James Knapp, (Tr. 718-46), who determined that Plaintiff was not disabled. (Tr. 588-96). The Appeals Council granted Plaintiff's request for review and remanded the matter for consideration of additional evidence. (Tr. 602-03).

3

On remand, Judge Knapp held another hearing, (Tr. 749-70), following which he determined that Plaintiff was disabled for the closed period August 1, 2004, to January 1, 2006, but that she was not disabled from her alleged onset date to August 1, 2004, or after January 1, 2006. (Tr. 25-40). The Appeals Council denied Plaintiff's request for review, (Tr. 11-14), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled outside the closed period, Judge Knapp found that Plaintiff has severe lumbar degenerative disc disease and a depressive disorder NOS, but that she did not have an impairment that met or equaled the Listings. (Tr. 38, findings 2, 3). Judge Knapp then found that between October 1, 2001, and August 1, 2004, and at all times since January 1, 2006, Plaintiff has had the residual functional capacity to perform a limited range of light work. Tr. 38-39, findings 5, 6. Judge Knapp then used section 202.14 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff was able to perform before and after the closed period. (Tr. 39, findings 12, 13). Judge Knapp concluded that Plaintiff was not disabled between October 1, 2001, and August 1, 2004, and at all times since January 1, 2006. (Tr. 40).

Examining psychiatrist Dr. Samy reported on February 26, 2001, that Plaintiff graduated from high school, was casually dressed but not very neatly, was not really groomed, cried quite often during the evaluation, and that the tone of her voice was continuously the same but went up and down sometimes. (Tr. 192-94). Dr. Samy also reported that Plaintiff's affect was intact and appropriately shown, her mood was depressed, she was alert and oriented, she displayed no manifestations of anxiety, and that she had good judgment. *Id.* Dr. Samy identified Plaintiff's diagnoses as depressive neurosis, alcohol dependence in remission since 1994, and polysubstance

4

dependence now in remission, and he assigned her a GAF of 50. *Id.* Dr. Samy opined that Plaintiff's ability to concentrate and to handle the stress and pressures of a job were not very good and that she was not able to work. *Id.*

Plaintiff sustained a work-related back injury in October, 2001, and has a history of treatment related to her alleged back impairment dating back to February, 2002, at which time she received emergency room treatment for complaints of low back pain that radiated into her legs. (Tr. 265; 268). Plaintiff subsequently participated in physical therapy, several sessions of which she did not attend, and in March, 2002, she reported that she no longer had back pain. (Tr. 238).

A July 10, 2002, MRI of Plaintiff's lumbar spine revealed disc degenerative change at L4-5 and central midline disc herniation with disc fragment extending below the disc space level at L4-5 resulting in a deformity of the anterior aspect of the thecal sac and moderate reduction in the AP diameter of the thecal sac at that level. (Tr. 291).

Plaintiff sought treatment from Dr. Pledger in January, 2003. (Tr. 423-57). Initially, Dr. Pledger reported that Plaintiff had positive straight leg raising on the right and decreased sensation in the right leg. *Id.* On February 10, 2003, a two level discogram at L3-4 and L4-5 revealed degenerative disc disease at L4-5 with reproduction of Plaintiff's symptoms and questionable pain with degenerative disc disease with questionable findings at the L3-4 level. (Tr. 343-44). On that same date, a lumbar spine CT revealed diffuse distribution of contrast in the disc space at L4-5 consistent with more severe degenerative changes. *Id.*

Plaintiff was hospitalized April 15 through 18, 2003, at which time Dr. Pledger performed a spinal decompression at L4-5, posterior lumbar interbody fusion with tangent bone, posterior lateral fusion at L4-5, and an epidural injection of Duramorph. (Tr. 368-95). Plaintiff

5

participated in post-operative physical therapy in May and June, 2003. (Tr. 396-401).

In July, September, and October, 2003, Plaintiff sought emergency room treatment for back pain. (Tr. 415-22; 427-28; 482-83). An October 8, 2003, MRI of Plaintiff's lumbar spine revealed evidence of Plaintiff's lumbar fusion but her vertebrae looked normal. (Tr. 499-500). A January 14, 2004, EMG indicated evidence of a moderately severe right L5 radiculopathy. (Tr. 487).

Dr. Pledger reported on February 11, 2004, that Plaintiff's diagnoses were mechanical low back pain post laminectomy and radiculopathy L5, and that she was permanently disabled due to severe L5 radiculopathy. (Tr. 434-36). On March 23, 2004, Dr. Pledger reported that Plaintiff needed to be off work. (Tr. 433).

Plaintiff received treatment for back pain and right leg pain from Dr. Schertzinger during the period January 21, through July 21, 2004. (Tr. 515-23). At the time Dr. Schertzinger first evaluated Plaintiff he noted that her physical examination was relatively unremarkable and he recommended treatment with medications. *Id.* Dr. Schertzinger also noted that Plaintiff would eventually be a candidate for work conditioning and job assessment and search. *Id.* In April, 2004, Dr. Schertzinger reported that Plaintiff was 75% improved and that she was increasing her general activities. (Tr. 460).

A CT of Plaintiff's lumbar spine performed on August 12, 2004, revealed a questionable small left disc protrusion at L3-4 which appeared to abut the exiting left L3 nerve root. (Tr. 473).

Dr. Pledger reported in January, 2005, that Plaintiff had decreased sensation in her right calf and great toe as well as tenderness in her low back. (Tr. 630-31). On January 11, 2005,

Dr. Pledger performed a removal of spinal hardware and resection of L4-5 facet. (Tr. 632-33).

Plaintiff treated with pain specialist Dr. Moore from February, 2005, to January, 2006. (Tr. 637-55; 666-99). Dr. Moore identified Plaintiff's diagnoses as postlaminectomy syndrome of the lumbar region and lumbago and he treated her with medications and modalities. *Id.* In June, 2005, Dr. Moore reported that Plaintiff had lumbar and hip pain that was chronic and acute and that medication provided about 40% relief and other treatment modalities provided about 20% relief. *Id.* Dr. Moore also reported that Plaintiff was able to lift/carry less than five pounds, sit for less than one hour in an eight hour day and for 15 minutes without interruption, and that her ability to sit was affected by her impairment. *Id.*

A June 2, 2005, MRI of Plaintiff's lumbar spine revealed mild residual lumbar levoscoliosis. (Tr. 657-58).

Plaintiff sought treatment with Dr. Durrani in May 25, 2005, and in July, 2005, Dr. Durrani performed a re-exploration of fusion at L4-5, re-instrumentation at L4-5, fusion at L4-5, and Smith-Petersen spinal osteotomy at L4-5. (Tr. 661-65). In August, 2005, Dr. Durrani reported that Plaintiff was doing very well. *Id.*

Plaintiff continued to receive treatment from Dr. Moore who reported on December 24, 2005, that Plaintiff had acute and chronic low back pain, that the pain was relieved by medications but not completely relieved, and that she was in so much pain that she was unable to work. (Tr. 695-99). Dr. Moore also reported that Plaintiff was able to lift/carry up to five pounds occasionally, stand/walk for one to two hours during an eight hour workday and for 15 to 30 minutes without interruption, and sit for one to two hours during an eight hour workday and for 30 minutes without interruption. *Id.* Dr. Moore noted further that even if she were able to perform sedentary

7

work, which she could not, Plaintiff would have many missed days of work due to pain exacerbations. *Id.*

Dr. Durrani reported in January, 2006, that Plaintiff was able to lift/carry no more than five pounds, stand/walk for less than one hour in an eight hour day and sit for one to two hours in an eight hour day and for 30 minutes without interruption. (Tr. 700-03). Dr. Durrani also reported that Plaintiff's ongoing pain issues made it difficult if not impossible for her to be employed in even a sedentary capacity. *Id.*

Examining physician Dr. Ray reported on April 6, 2006, that Plaintiff was able to ambulate on her heels and toes without difficulty, her Romberg test was negative, she was able to reach 50% of a squat position, that examination of her spine revealed mild malignment with tenderness in the center as well as the right lumbosacral paraspinal area, and that there were no muscle spasms. (Tr. 704-13). Dr. Ray also reported that Plaintiff exhibited negative straight leg raising and decreased sensation over the right lateral leg and foot as well as dorsum of the right foot compared to the left, and that her ankle reflexes were zero bilaterally. *Id.* Dr. Ray noted that Plaintiff's history, physical examination, and the review of her medical record was most compatible with L4-5 disc disease requiring three surgical procedures with the last surgery on July 25, 2005, consisting of fusion of the L4-5 and re-instrumentation, that there was no evidence of radiculopathy on his examination of Plaintiff, and that she might have nerve root irritation resulting in the right leg pain and sensory changes. *Id.* Dr. Ray opined that Plaintiff was able to lift/carry up to ten pounds frequently and 20 pounds occasionally, stand/walk for four hours in an eight hour day and for one hour without interruption, and sit for six hours in an eight hour day and for one hour without interruption. *Id.*

Plaintiff alleges in her Statement of Issues that the Commissioner erred by failing to give the proper evidentiary weight to the opinions of her treating physicians and by failing to find that she was credible. (Doc. 9).

Plaintiff argues first that the Commissioner erred by failing to give controlling weight to Dr. Pledger's opinion as to her abilities between her alleged onset date and August 1, 2004, as well as to Dr. Moore's and Dr. Durrani's opinions as to her abilities after January 1, 2006.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had

9

a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

First, this Court notes that Drs. Pledger, Moore, and Durrani have been Plaintiff's long-term treating physicians. Dr. Pledger first treated Plaintiff in January, 2003, and continued to treat her through at least January, 2005. Dr. Moore has treated Plaintiff since about February, 2005, and Dr. Durrani has treated her since May, 2005. Over time, these long-term treating physicians have consistently opined that Plaintiff is disabled by her back impairment for which she has undergone several surgeries. In addition, while those treating physicians' clinical notes reveal that at times Plaintiff appeared to improve intermittently, she exhibited positive clinical signs such as decreased sensation, tenderness, decreased or absent reflexes, and decreased ranges of motion.

Further, the objective medical evidence supports those physicians' opinions. For example, an EMG indicated moderately severe radiculopathy and a CT scan revealed severe degenerative changes. Finally, these physicians have documented Plaintiff's complaints of pain which have been consistent over time.

The only evidence which opposes the treating physicians' opinions are the opinions of the one-time examining physician and the nonexamining reviewing physicians. Under these facts, the Commissioner erred by rejecting Dr. Pledger's, Moore's, and Durrani's opinions that Plaintiff is disabled. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolve and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Plaintiff's three long-term treating physicians, Drs. Pledger, Moore, and Durrani, have consistently opined that Plaintiff is disabled and their opinions are supported by the evidence of record.

11

Additionally, the only evidence which arguable conflicts with those opinions are the reports and opinions of the one-time examining physician and nonexamining reviewing physicians.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

March 19, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).